The Bell Telephone Company of Pa., Appellant, *v.* Public Service Commission of Pa. et al.

Argued April 17, 1931.

Before Trex-
ler, P. J., Keller, Linn, Gawthrop, Cunningham,
Baldrige and Drew, JJ.

*W. Pitt Gifford,* and with him *William H. Lamb,* for appellant.

*Charles H. English* of *English, Quinn, Leemhuis & Tayntor,* for intervening appellee.

*E. Everett Mather, Jr.,* Assistant Counsel, and with him *Daniel H. Kunkel,* Legal Assistant, and *John Fox Weiss,* Counsel, for appellee.

Opinion by Cunningham, J., July 8, 1931:

The Bell Telephone Company of Pennsylvania has appealed from an order of the Public Service Commission dismissing its complaints against Petroleum Telephone Company and Mutual Telephone Company (now

Pennsylvania Telephone Corporation) at Nos. 8258 and 8259 of the complaint docket of the commission. The questions involved are identical and will be disposed of in a single opinion.

The basis of the complaints is the proposed construction of a telephone line by Petroleum Telephone Company, intervening appellee at No. 51, October Term, 1931, from Hydetown, Crawford County, northwardly to Centerville, in the same county, and by Mutual Telephone Company, intervening appellee in No. 52, October Term, 1931, from Union City, Erie County, southwardly to Centerville, where these lines will connect; a portion of the Petroleum line has been constructed and the Mutual has been staked along its route. The material facts are not in dispute; the contentions of the parties revolve around questions relative to the intentions of the Petroleum and Mutual companies in building the line and the purposes for which it is to be used. There is also involved the question whether its construction would be violative of the provisions of certain contracts, hereinafter referred to, and whether jurisdiction to determine that question is in the appropriate common pleas courts or in the commission.

Prior to March 27, 1924, the Bell and Petroleum companies were competing in Venango County and in parts of Crawford, Warren and Forest Counties. On that date they entered into an agreement (subsequently approved by the Pennsylvania and Interstate Commerce Commissions) having for its object the elimination of competition, along with its attendant duplication of facilities, within an agreed-upon territory, defined and designated by heavy black boundary lines upon a map of Venango and adjoining counties attached as an exhibit to the agreement. Primarily, the agreement provided for the sale by the Bell to the Petroleum Company of telephone lines and other inventoried property of the Bell within the defined area.

Obviously there were three classifications of service to the public to be provided for—ordinary local service through local exchanges, toll service between points, both of which are within the area, and toll service between points within and points without the territory assigned to the Petroleum Company. With respect thereto the agreement provided that the Bell Company, after delivery of title to the physical and tangible property covered by the agreement, "will discontinue furnishing local exchange service within the area enclosed in the heavy line on said Exhibit A and thereafter will not furnish such local exchange service within said territory by means of its own facilities. The Bell Company also agrees that, after said date, it will not furnish or render toll service between any two points, both of which are located within the heavy line on said Exhibit A."

On the other hand the Petroleum Company covenanted and agreed that it would not "construct, purchase, lease or otherwise provide, or allow to be provided, any circuit, circuits or toll line facilities from any points located within the area embraced within the heavy line on said Exhibit A to points without said area, without the consent, in writing, of The Bell Company, and the approval of The Public Service Commission." The centers of population within the designated area are Franklin and Oil City, Venango County, and Titusville, Crawford County.

On April 3, 1925, a similar contract was entered into between the Bell and Mutual companies covering an area designated in the same manner and co-extensive with the County of Erie.

In both contracts it was provided that the parties would enter into traffic agreements for the interchange of toll messages between points within and points without the designated areas, using the standard form of traffic agreement of the Bell Company.

In the complaint against the Petroleum Company, filed February 21, 1930, the Bell Company pleaded the contract, consummated July 31, 1924, and averred that it had complied with its covenants by refraining from furnishing any local telephone service within the prescribed area and by entering into a traffic agreement with the Petroleum Company covering the interchange of telephone business between points within and those without the territory. It then complained that the Petroleum Company, although it had not obtained the approval of the commission or the permission of the Bell Company, was then constructing "a pole line, with ten-pin cross-arms placed thereon, from Hydetown in Crawford County, a point now reached by [Petroleum's] existing facilities from Titusville in said county, to Centerville in said county, which latter point is approximately three miles outside the said area, ...... where said pole line and circuit or circuits will be connected with a pole line and circuit or circuits that are about to be constructed by Mutual Telephone Company in a northerly direction from Centerville to a point within Erie County approximately two miles south of Union City, which point is now reached by Mutual Telephone Company's existing facilities, for the purpose of interchanging telephone and other business between points in Crawford, Venango, Warren and Forest Counties within the ...... territory of Petroleum Telephone Company and points within Erie County, being the territory of Mutual Telephone Company.''

A further averment is to the effect that the construction of the line will cause immediate and irreparable injury and damage to the Bell Company and an unnecessary and uneconomical duplication of facilities.

The similar complaint against the Mutual Company averred that the contract with that company was consummated March 31, 1926, and complained of the pro-

posed construction by the Mutual Company of a pole line from a point two miles south of Union City, Erie County, to the vicinity of Centerville, Crawford County, a point outside of the Mutual's assigned territory, where it will be connected with the above described line of the Petroleum Company and form a line for the interchange of telephone business between points within Erie County, in the territory of the Mutual Company, and points in Crawford and Venango Counties within the territory of the Petroleum Company.

In its answer the Petroleum Company admitted that it had begun, in conjunction with the Mutual Company, the construction of a line substantially as described in the complaint but averred that it intended to move its principal office from Oil City, Venango County, to the City of Erie, and that the line "will be used in the interchange of messages incident to the management" of the Petroleum Company; the answer of the Mutual Company was to the same effect. Prior to filing the complaints, the Bell Company, seeking to protect its alleged rights, filed bills in equity in the common pleas of Erie and Venango Counties, praying for injunctions to restrain the Mutual and Petroleum Companies from proceeding with the construction of the line and obtained in each county preliminary injunctions to that effect, which injunctions, as we understand the record, are still in force and restrain the Mutual and Petroleum Companies from making connections between their respective facilities within their prescribed areas and any facilities outside thereof.

In addition to the complaints we have mentioned, the Meadville Telephone Company, rendering service principally in Crawford County, and into which the Eastern Crawford Telephone Company, serving the town of Centerville and adjacent territory, had been merged, filed a complaint in January, 1930, against the

Petroleum Company at Complaint Docket No. 8239 of the commission. The substance of its complaint was that the Petroleum Company was erecting, without authority from the commission, a pole line from Centerville south, through Hydetown, to Titusville (the section from Centerville to Hydetown being a portion of the line in question under the complaints of the Bell Company), upon which it intended to place wires and render service in Centerville and vicinity. In its answer the Petroleum Company admitted the erection of the poles and averred that it had been rendering service for twenty years in the Townships of Rome, Oil Creek and Steuben, Crawford County (whereas the Meadville Company served only in Centerville, originally a part of Rome Township), but had no intention of serving Centerville and vicinity. This complaint, which was disposed of by the commission along with the complaints of the Bell Company, was sustained and the Petroleum Company ordered to "furnish no local exchange service in the area between Centerville and Sturtevant [a point some distance south of Centerville] without having first obtained the approval of the commission." No appeal was taken by the Petroleum Company from this order and the matter is therefore merely incidental to the issues under the present appeals, except in so far as it sheds some light upon the original purpose of the companies in constructing the line. It is clear from an examination of the testimony before the commission that the Mutual and Petroleum Companies have begun, and intend to continue, the construction of a line suitable for the transaction of toll business from a point, Hydetown, "located within the area embraced" in the contract with the Petroleum Company, across Crawford County to a point, Union City, Erie County, located within the territory described in the contract with the Mutual Company, and that the portion of the line between the

southern boundary of Erie County and the northwestern line of the territory assigned the Petroleum Company will be outside of territory assigned either company under the respective contracts. No permission or approval has been sought either from the Bell Company or the commission; poles have been erected and three wire circuits placed thereon between Hydetown and Centerville and the line staked from Centerville to Union City; further construction was halted by the injunctions. The Bell Company was therefore warranted in endeavoring to secure in an appropriate tribunal a determination of the question whether the building of this line is a violation by the Petroleum and Mutual Companies of their covenants.

The contention of counsel for the Bell Company is that the contracts were entered into for the purpose of carrying out a well-defined policy for the elimination of competition, under which the Bell Company would sell to the independent company its facilities within a defined territory, shown by a map attached to the agreement, retire from local exchange service and toll service between points within that area and limit itself to the operation of toll business between points, one of which should be within and the other without the territory, and the independent company would confine its operations to the limited territory, both for local exchange and toll service. Their further contention is that the purpose of the covenants upon the part of the Petroleum and Mutual Companies against constructing lines outside of their respective areas was to secure to the Bell Company, so far as they were concerned, the sole right to build and maintain "interconnecting lines and the sole right to handle telephone and other business thereover between points within and points without" those areas.

On the other hand, counsel for Mutual and Petroleum Companies assert that the line "is not to be used for

toll purposes, or in competition with the Bell Company where that company comes into contact with its toll customers," but, as the stock of both companies is now owned by the Associated Telephone Utilities of Chicago, it is desirable to operate the Petroleum as well as the Mutual from the City of Erie and the proposed line will be used for "administrative purposes from Erie in directing and managing the Petroleum properties at Oil City, Titusville and Franklin" and another property at Riceville through which the line will pass. Their position is that thus physically connecting the properties "for operating purposes" is not a violation of their contractual obligations to the Bell Company. There is considerable confusion in the testimony with respect to the present status of the local service at Riceville, but as the commission made no specific finding concerning that service we confine ourselves to the main issue. The general manager of the Mutual testified that "at the present time there is no intention to render toll service over this connecting line." On cross-examination he said, "I don't know what the future intentions may be. That is why I say at the present time we are constructing the line for administrative purposes." It is also contended by counsel for the Mutual and Petroleum that as the line is not to be used for any public service approval by the commission of its construction is not necessary. Two aspects of the matter now in hand are, therefore, presented: first, the rights and obligations of the companies, as between themselves, under their contracts, and, second, the superior rights of the public to adequate telephone service in that section of the state. Such contracts for the elimination of competition and consolidation of service may not be permitted to interfere with the power and duty of the commission to require utilities to be operated in the manner which will best serve the accommodation and convenience of the

public. As to the contracts, the commission held, and we think correctly, that, as a matter of law, the jurisdiction to construe their provisions and adjudicate the rights and obligations of the parties thereto, as between themselves, is in the courts, but that the Petroleum and Mutual Companies, by joining with the Bell in seeking and obtaining the commission's approval of the contracts, had definitely agreed that they would not exercise their charter rights outside of the defined and limited areas and, therefore, could not legally render any public service beyond the boundaries marked upon the attached maps without first obtaining the approval of the commission.

It was upon this ground that the commission sustained the complaint of the Meadville Telephone Company after concluding from the evidence in support thereof that the Petroleum Company intended to give local service along the line in question outside of the area marked upon the map applicable to that case. In the present cases, however, the commission's controlling finding of fact was that the record does not indicate any intention upon the part of the Petroleum and Mutual companies to render public telephone service over the proposed line beyond the limits of the respective areas defined in the contracts.

This conclusion, at least in so far as the present intention of the Petroleum and Mutual companies is concerned, is supported by the testimony and, in our opinion, justifies the orders dismissing the complaints to the commission by the Bell Company. The commission did not undertake to construe the contracts or to decide whether the construction of the line would violate any right of the Bell Company thereunder. In effect, it has merely said that, having disposed of the complaint of the Meadville Company, it is satisfied, upon investigation, that the matter of service to the public is not now involved in the controversy between

these telephone companies and, therefore, has concluded it has no jurisdiction at this time over any phase of the dispute.

The orders of the commission dismissing the complaints are affirmed.